STEVEN E. YOUNG (BAR NO. 63278)
steven.young@ffslaw.com
TODD M. LANDER (BAR NO. 173031)
todd.lander@ffslaw.com
ARASH BERAL (BAR NO. 245219)
arash.beral@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:  (310) 255-6200

Attorneys for Plaintiff
RICK K. SIRODY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RICK K. SIRODY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITIBANK, N.A., a national banking association organized under the laws of the United States; CITIMORTGAGE, INC., a corporation organized under the laws of the State of New York; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No. 2:13-CV-6897 DSF RZx<br><br>**PLAINTIFF RICK K. SIRODY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>*[Filed Concurrently with Declaration of Arash Beral]*<br><br>Date:    November 25, 2013<br>Time:   1:30 p.m.<br>Crtrm.: 840 |

2072465.1 23583-800

PLAINTIFF RICK K. SIRODY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

## I. INTRODUCTION

This action comes to this Court following the entry of a Temporary Restraining Order ("TRO") and Order to Show Cause ("OSC") re: Preliminary Injunction on September 9, 2013 against Defendants Citibank, N.A. and CitiMortgage, Inc. (and anyone acting in concert or participation with them) in state court. Specifically, the TRO restrained and enjoined Defendants from foreclosing on Plaintiff's Property and directed and compelled them to remove any cloud on title to the Property, including any lien, Deed of Trust, and Notice of Default. (Declaration of Arash Beral ("Beral Decl."), ¶ 3, Exh. "A.") At a September 16, 2013 hearing on Plaintiff's application to modify the bond/undertaking term of the TRO/OSC, Defendants' counsel essentially made the same arguments to the state court re: standing and statute of limitations (as it is doing here), and those arguments were rejected. (Beral Decl., ¶ 4.) Two days later, Defendants removed this case to this Court, which appears (to Plaintiff) designed to serve as a means to avoid (a) compliance with the TRO and (b) issuance of a preliminary injunction at the OSC hearing. Suffice it to say that the Defendants have not yet complied with the terms of the TRO, and the Property continues to be clouded and subject to unlawful foreclosure proceedings.[1]

Astoundingly, despite the issuance of the TRO and OSC, Defendants march into this Court and argue that Plaintiff is defenseless. They argue that Plaintiff has no right to defend himself from baseless foreclosure proceedings on *his* home because he lacks *standing* to do so and that regardless of the standing issue, Plaintiff's lawsuit is time-barred. Defendants are wrong on both counts. First, because it is *Plaintiff's* home that Defendants are seeking to foreclose on, Plaintiff is the real party-in-interest and has standing to contest the foreclosure proceedings. Plaintiff is also a signatory to the subject Deed of Trust providing yet an additional ground for standing. And

---

[1] Defendants *have* represented to Plaintiff and the state court that all foreclosure proceedings have been "postponed" for the time being.

2072465.1 23583-800

1

PLAINTIFF RICK K. SIRODY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

second, Commercial Code § 4406 – mandating that "customers" of banks who receive statements from the banks must notify their respective bank of any unauthorized signature on a check within one year – has absolutely no application to this lawsuit whatsoever. Plaintiff here was never a "customer" of Defendants. His deceased brother – who opened the equity line of credit under his own name – was. Therefore, that code section does not apply to Plaintiff, and it would be patently unfair to apply it to him in the first place since Defendants' statements were not addressed to Plaintiff. Indeed, as soon as Plaintiff discovered that his deceased brother's daughter forged a check under her father's name on the equity line of credit, Plaintiff notified Defendants immediately. It appears as though Defendants are grasping at straws to escape the bar of foreclosure on the Property. Defendants' efforts must be rejected.

Since Defendants' arguments that Plaintiff lacks standing and/or that he is time-barred from bringing this lawsuit to protect his interests in his home lack any merit, Plaintiff respectfully submits that Defendants' motion should be denied.

## II.  STATEMENT OF FACTS

Plaintiff Rick Sirody and his late brother Steve Sirody (hereinafter, "Steve") acquired title, as joint tenants, to the Property on February 4, 2005. (Verified First Amended Complaint ("VFAC"), ¶ 9, Exh. "A".) Also on that day, Steve received a home equity line of credit through Citibank in the amount of $100,000.00, putting up the Property as collateral. (VFAC, ¶ 10, Exh. "B".)

Steve passed away on September 3, 2011 due to a degenerative neurological disorder (Creutzfeldt Jakob Disease) that is characterized by rapidly progressing dementia, leading to memory loss, personality changes and hallucinations. (VFAC, ¶ 11.) While Steve was terminally ill in the hospital, and on the very day before his death, Steve's daughter Molly forged a check in the amount of $89,000.00 which was drawn from the home equity line account and deposited directly into Molly's personal bank account. Nobody, including Steve, knew about Molly's actions, nor did Steve authorize Molly to take this action. (VFAC, ¶ 12.)

Plaintiff immediately notified Defendants of Steve's death. On or about February 10, 2012, Defendants sent a letter acknowledging the fact of Steve's death. (VFAC, ¶ 11, Exh. "C".) On or about May 31, 2012, Plaintiff executed an "Affidavit – Death of Joint Tenant" and recorded it with the Los Angeles County Recorder's Office. (VFAC, ¶ 11, Exh. "D".) Despite all of that, on or about October 9, 2012, Defendants sent correspondence to Steve (who had passed away over a year earlier) demanding payment. (VFAC, ¶ 14, Exh. "E".) Immediately thereafter, Plaintiff wrote Defendants and explained the circumstances surrounding Steve's death as well as all of the facts known to Plaintiff regarding Molly's actions with regard to the alleged debt. (VFAC, ¶ 15, Exh. "F".)

Defendants ignored Plaintiff. (VFAC, ¶ 16.) Instead, on or about July 15, 2013, Defendants sent correspondence to the Property addressed to Steve (who at that point had been deceased for almost two years), Plaintiff, Steve's heirs and devisees, and Steve's estate, advising that foreclosure proceedings on the Property *had begun* and that a Notice of Default had been recorded against the Property. (VFAC, ¶ 16, Exh. "G".)

This action ensued. On August 29, 2013, Plaintiff filed this action in state court seeking to protect himself from the foreclosure proceedings that Defendants said had begun. (Beral Decl., ¶ 2.) On September 9, 2013, Plaintiff applied for and was issued a TRO enjoining, among other things, Defendants from foreclosing on the Property. (Beral Decl., ¶ 3, Exh. "A".) Two days before the OSC hearing re: preliminary injunction, Defendants removed the action to this Court. (Beral Decl., ¶ 5.) Following a meet and confer exchange concerning Plaintiff's Verified Complaint, Plaintiff agreed to – and did – file his VFAC with this Court. The VFAC asserts only two causes of action: (1) Quiet Title; and (2) Declaratory Relief. (Beral Decl., ¶ 6.) Despite the filing of the VFAC, Defendants remain dissatisfied and are seeking the extraordinary relief of *dismissal* on the ground that Plaintiff is helpless in that he

3
PLAINTIFF RICK K. SIRODY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

cannot defend himself and the Property against foreclosure proceedings.  Defendants' positions must be rejected.

### III. LEGAL ARGUMENT

#### A. Plaintiff has Standing to Bring his Claims.

As mentioned above, Plaintiff asserts only two causes of action in his lawsuit: (1) Quiet Title; and (2) Declaratory Relief.  As far as the standing question on the Quiet Title claim is concerned, California law established long ago that any averment that a plaintiff is the owner of the property at the time of the filing of the complaint is sufficient to state a quiet title cause of action.  (Cal. Civ. Proc. Code § 761.020(b); Meyer v. O'Rourke (1907) 150 Cal. 177, 178; Peck v. Martinez (1941) 46 Cal.App.2d 855, 856; Stafford v. Ballinger (1962) 199 Cal.App.2d 289, 292; Warren v. Atchison, T. & S. F. Ry. Co. (1971) 19 Cal.App.3d 24, 32 ["a complaint is sufficient if it alleges an interest of plaintiff in the property and that the defendant asserts a claim concerning the property adverse to the plaintiff's interest"].)  And as far as the standing question on the Declaratory Relief claim goes, federal law (which now applies here) establishes that a plaintiff has standing to seek declaratory relief if he shows that he suffered or faces an actual or imminent "(1) injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is likely to be redressed by a favorable decision."  (Lujan v. Defendants of Wildlife (1992) 504 U.S. 555, 560-561; Motsinger v. Nationwide Mut. Ins. Co. (D. S.C. 2013) 920 F.Supp.2d 637, 642-643; 28 U.S.C. § 2201.)

In this action, Plaintiff alleges that by virtue of Steve's death in 2011, Plaintiff became the sole owner of the Property.  (VFAC, ¶ 20.)  That allegation alone confers standing on Plaintiff to seek to quiet title any adverse interests in the Property.  (See Cal. Civ. Proc. Code § 761.020(b), supra; see also Cal. Civil Code § 683; Plante v. Gray (1945) 68 Cal.App.2d 582, 588; Dang v. Smith 190 Cal.App.4th 646, 659-660.)  Plaintiff also alleges that a case or controversy exists between him and Defendants concerning the Property and Defendants' action in seeking to

4

foreclose on the Property, such that a judicial declaration is necessary in order for the parties to ascertain their rights and duties. (VFAC, ¶¶ 30-31.) Those allegations confer on Plaintiff standing to bring his Declaratory Relief cause of action. (See Lujan, supra.)

Defendants argue: "Here, Plaintiff is neither the borrower under the Equity Source Account nor the personal representative or executor of the decedent borrower, Steve's, estate and, therefore, lacks standing to bring claims related to the Equity Source Account …" (Defendants' Memorandum, p. 6, lines 18-20.) Defendants' argument is misplaced. While it is true that Plaintiff is not the borrower on the Account or an executor of Steve's estate, those facts are irrelevant when it comes to the question of whether Plaintiff *has standing* to bring a Quiet Title and Declaratory Relief action to protect *his* Property. Certainly, had Plaintiff brought a lawsuit against Defendants for breach of the terms of the Equity Source Agreement, or the like, Defendants' standing argument may have some merit. But Plaintiff is not bringing – nor does he purport to bring – any claims that belong to his deceased brother alone. Plaintiff's claims here belong to *him*. Indeed, again, it is *Plaintiff's* Property that is being foreclosed upon.

Moreover, Defendants' argument is further undermined by the fact that Plaintiff was a signatory on the subject Deed of Trust. Certainly, Plaintiff has standing to object to Defendants' foreclosing on the Deed of Trust. Indeed, the state court, too, believed that Plaintiff's being a signatory on the Deed of Trust, if not for any other reason, would provide Plaintiff the standing he needs to prosecute this action. (Beral Decl., ¶ 4.)

A review of Defendants' *own cases* reveals that Plaintiff has standing to prosecute this action. For example, Defendants cite Gantman v. United Pac. Ins. Co. (1991) 232 Cal.App.3d 1560, 1566 for the proposition that the person who holds title to property has the right to sue under it. (Defendants' Memorandum, p. 6, lines 4-7.) Of course, and as Plaintiff established above, Plaintiff holds title to the

Property, and as such, he has standing to bring this action. Defendants cite not a single case holding the opposite to be true. There simply is none.

### B. Plaintiff's Lawsuit is Not Time-Barred.

Defendants further argue that Plaintiff's lawsuit – which was filed a mere 45 days after Defendants notified Plaintiff that they had commenced foreclosure proceedings on the Property – is time-barred. Defendants rely on Commercial Code § 4406(f), which states:

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subdivision (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

By its own terms, this code section applies to a "customer" of the bank. Defendants admit *in their own moving papers* that Plaintiff was not the borrower, i.e., customer, on the Equity Source Account. (Defendants' Memorandum, p. 6, lines 18-20.) Therefore, Plaintiff is in no way, nor could he ever be, subject to this code section.[2] Indeed, the purpose of the code section is to place an affirmative duty on a *bank customer* to examine a *bank statement* to determine that "items paid" are properly charged against the *customer's account*. (In re McMullen Oil Co. (C.D. Cal. 2000) 251 B.R. 558, 578.) Here, Plaintiff's *brother* was the "customer" who received the bank statements on the account (which was solely held in Plaintiff's brother's name). It would be highly unfair to deny *Plaintiff* – who, again, was not the customer on the account – an opportunity to defend himself and his Property from baseless

---

[2] Moreover, the Court should note that Section 4406 is not per se a statute of limitations, but instead is an issue-preclusion statute. Unlike a statute of limitations, it does not purport to bar an action against a bank. Rather, it simply precludes a customer from asserting a forgery or alteration against the bank if the customer has failed to discovery and report the forgery or alteration to the bank. (Roy Supply, Inc. v. Wells Fargo Bank (1995) 39 Cal.App.4th 1051; In re McMullen Oil Co., infra.)

foreclosure proceedings based on a statute that does not even apply to him.

Further, the code section does not apply in this case for yet another reason: that the code section does not even govern this matter.  (See Far West Citrus, Inc. v. Bank of America, Nat. Trust & Sav. Ass'n (1979) 91 Cal.App.3d 913, 917 *superseded by statute as stated in* Edwards Fineman Co. v. Superior Court (1998) 66 Cal.App.4th 1110, 1120 [where gravamen of complaint was not based on an unauthorized signature but that the bank disbursed funds without a necessary second signature, Section 4406 did not apply].)  The gravamen of Plaintiff's lawsuit does not rely solely on the forgery on the account.  In fact, *even if* there were no forgery, Plaintiff would still be entitled to bring this lawsuit because upon Steve's death, the Property passed through joint tenancy to Plaintiff.  (Cal. Civil Code § 683; Plante v. Gray (1945) 68 Cal.App.2d 582, 588.)  As such, Plaintiff had no obligation on any debt incurred by Steve.  (Dang v. Smith 190 Cal.App.4th 646, 659-660).  As the Dang Court pointed out:

> When a judgment debtor holds property in joint tenancy, the recordation of a judgment lien will encumber the property only to the extent of the debtor's interest. This is an application of the more general rule that an encumbrance against property held in undivided interests—whether a joint tenancy or a tenancy in common—attaches only to the interest of the tenant whose obligation the encumbrance secures. The possibility of the debtor's death poses no particular hazard to the creditor of a tenant in common, for it will not impair the encumbered interest; that interest will pass into the debtor's estate, and be available to satisfy his debts. But the distinguishing characteristic of a joint tenancy is that each tenant has a right of survivorship, by which, upon the death of the other tenant, the survivor will automatically succeed to the entire property. In effect, the decedent's title is extinguished, and with it any interest to which his judgment creditor's lien had attached. **The result is that the lien ceases to encumber the property, and the survivor succeeds to the whole property "free and clear of the judgment lien."**

(Id. [emphasis added and citations omitted].)  In our case, Defendants' lien on the Property ceased to exist upon Steve's death.  Therefore, Defendants simply cannot and have no right to foreclose on the Property, which is now owned solely by Plaintiff, and Plaintiff has a right to quiet title on any adverse interest that Defendants claim to have in the Property, *regardless of the forgery issue*.

Nor can Defendants hold Plaintiff responsible for the debt on the home equity line account because Plaintiff had no interest in that account. As a matter of law, Steve could not have bound Plaintiff to be responsible for the agreement he signed with Defendants. (See Eagle Oil & Refining Co. v. James (1942) 52 Cal.App.2d 669, 677 ["One joint tenant or tenant in common cannot bind his cotenant by any contract which he may make relating to the common property"].) Therefore, *even if* the check was written or authorized to be written by Steve (which it was not), Plaintiff would not be responsible for the alleged debt, and thus, could bring the instant lawsuit to quiet title and to seek declaratory relief.

In any event, it is hard to imagine any scenario by which Section 4406 has any application to this lawsuit or that Plaintiff's lawsuit is barred as a result therein.[3]

## IV. CONCLUSION

Plaintiff respectfully submits that he has standing to defend his Property from unlawful foreclosure proceedings and that Commercial Code § 4406 has no application here. For these reasons, Defendants' motion should be denied.

DATED: November 4, 2013            Respectfully submitted,

FREEMAN, FREEMAN & SMILEY, LLP


By:     / s / Arash Beral
        STEVEN E. YOUNG
        TODD M LANDER
        ARASH BERAL
        Attorneys for Plaintiff RICK K. SIRODY

---

[3] Again, *even if* Section 4406 applies, which it does not for the reasons stated above, it only serves to preclude Plaintiff from raising the forgery as an issue against Defendant. It does not in any way bar the lawsuit altogether. (Roy Supply, Inc., supra; In re McMullen Oil Co., supra.)

8
PLAINTIFF RICK K. SIRODY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED